```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
STACIA DOMINGO,                                             :
                                                            :
                        Plaintiff,                          :
                                                            :    **MEMORANDUM DECISION**
            -against-                                       :    **AND ORDER**
                                                            :
AVIS BUDGET GROUP, INC., AVIS                               :    18-cv-5430 (BMC)
BUDGET CAR RENTAL, LLC, AB CAR                              :
RENTAL SERVICE, INC., JESUS FELIZ,                          :
individually, ERIC "LAST NAME                               :
UNKNOWN", individually, AND JAMAAL                          :
"LAST NAME UNKNOWN", individually,                          :
                                                            :
                        Defendants.                         :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff, a former employee of Avis Budget Car Rental, brings this action alleging she was subjected to a hostile work environment, retaliation, and gender discrimination. Her claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq*. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*. ("NYCHRL"). Defendants, her former employer and co-workers, have moved for summary judgment. There is no basis for her hostile work environment, retaliation, and gender discrimination claims under federal and state law, and I therefore grant summary judgment dismissing those claims. I decline to exercise supplemental jurisdiction over plaintiff's remaining claims under NYCHRL.

## BACKGROUND

The following undisputed materials facts are taken from the parties' Local Rule 56.1 statements and construed in the light most favorable to plaintiff.

From June 19, 2017 through August 31, 2017, a total of 73 days, plaintiff worked at Avis as a probationary parts clerk. Her primary duties were to order necessary parts for rental vehicles and ensure Avis received the correct parts. For the "first couple of weeks," there were occasions when plaintiff ordered the wrong parts, but her accuracy improved once she became familiar with the computer system.

As a new employee, plaintiff was subject to Avis's probationary period policy. Under the policy, an employee's attendance was closely monitored, and discipline could be accelerated during the probationary period. During one particular five-day workday period from July 25, 2017 through July 31, 2017, she was late or absent every day. Her supervisor, Jesus Feliz, issued her a written warning, also providing her with a hard copy of Avis's attendance policy.

Plaintiff testified in her deposition that, around July 6, 2017, a co-worker, Eric Roberts, asked her out on a date, stating that he could imagine what she "tasted like." Feliz overheard Roberts' inappropriate comment, but he did not reprimand him or otherwise take any corrective action. When plaintiff confronted Feliz about this, he threw his hands up in the air and told her to get back to work. As a supervisor, Feliz had a duty to report any harassment or discrimination that was brought to his attention.

A few days later, around July 10, 2017, another co-worker, Jamaal Sterling, touched plaintiff's buttocks. Plaintiff testified in her deposition that Sterling "grabbed" her buttocks, giving it "just a little squeeze." Her affidavit in opposition to defendants' summary judgment described the incident as a "grope." Shocked and appalled, plaintiff ran to the restroom to escape the distressing situation. She neither confronted Sterling, nor did she feel comfortable reporting

this incident to Feliz because he had previously failed to correct Roberts' misconduct only a few days earlier, and she was afraid that she would be subject to retaliation.[1]

Around mid-July 2017, Feliz began assigning plaintiff administrative tasks that she believed were not part of her written job description, such as changing the oil pads and completing excel spreadsheets as though plaintiff was the "office secretary." Plaintiff did not complete these assignments despite Feliz's directions. Around July 27, 2017, in order to find out whether her newly assigned tasks were consistent with her duties, plaintiff spoke to a Human Resources ("HR") representative from Avis, and she sought out the written job description for her position. The HR representative emailed her shortly thereafter with an attached job description for a parts clerk. During her deposition, plaintiff testified that the job description provided to her by HR was not the one she was given when she was first hired by Feliz. She also testified that she kept the first job description and provided this to her attorney as part of discovery. However, plaintiff's attorney did not produce this alleged document during discovery.

In early August 2017, plaintiff contacted the Equal Employment Opportunity Commission ("EEOC"), requesting information on how to formally file a complaint against Feliz and Sterling. On August 22, 2017, Feliz issued plaintiff a negative performance evaluation, which stated, in part, that plaintiff was not completing the daily tasks "as required for a person in [her] position." Around a week later, within plaintiff's 90-day probationary period, Feliz fired her and explained it was because she wasn't completing the assigned data entry and oil pad changes.

---

[1] Plaintiff made several reports to Mr. Singh, a non-supervisory bus mechanic, whom she believed to be a "union representative" from the local union in which many Avis employees were members, but there is no evidence that Singh ever called plaintiff's complaints to Avis's attention.

3

After she was fired, plaintiff came back to Avis to pick up some paperwork. After "looking her up and down," Feliz made a comment on why she didn't come to work dressed like that before.

## DISCUSSION

### I.

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A dispute as to a material fact is "'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party must put forward some "concrete evidence from which a reasonable juror could return a verdict in his favor" to withstand a motion for summary judgment. Id. at 256. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Id. When deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (internal quotation mark omitted).

**II.**

Hostile work environment claims under Title VII and NYSHRL are governed by the same standard. See Summa v. Hofstra University, 708 F.3d 115, 123-24 (2d Cir. 2013). A hostile work environment exists "'[w]hen the workplace is permeated with disciplinary intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004) (citation omitted). The Supreme Court has identified four factors to consider in determining whether harassing conduct is sufficiently severe or pervasive to alter an employee's terms or conditions of employment: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or a mere offense utterance; and (4) whether it unreasonably interfered with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).

Plaintiff's allegations fail to satisfy the "pervasiveness" standard. In Mormol, 364 F.3d at 59-60, the Second Circuit held that six instances occurring within one month were "far from being pervasive" when the inappropriate acts "were few and occurred within a short span of time." Likewise, the allegations here cannot be pervasive because plaintiff only alleges two inappropriate incidents over a span of a week while working for Avis. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) ("Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment."). The comment made by Feliz occurred after plaintiff's termination, and thus cannot be used to establish a hostile work environment. See Ceasar v. Riverbay Corp., No. 15-cv-8911, 2017 WL 6887597, at *11 (S.D.N.Y. Dec. 27, 2017).

5

Pervasiveness is not the only way to demonstrate a hostile work environment. Where there is a lack of pervasiveness, the allegations of sexual harassment must be "extraordinarily severe" for a plaintiff to raise an issue as to a hostile work environment. Mormol, 364 F.3d at 59. In Mormol, the Second Circuit concluded the allegations were insufficiently severe to survive summary judgment under circumstances more egregious than alleged here: (1) the plaintiff's supervisor, Ziermann, told Mormol that he would not approve her vacation request if she did not have sex with him; (2) later that month, he forced her to return prematurely from her vacation for no apparent reason, telling her that, if she did not return early, she would be transferred or fired; (3) when she returned to work, Ziermann gave her a note in which he stated that, if she agreed to have sex with him, he would give her money and make her a full-time employee while permitting her to work part-time; and (4) when she declined his sexual advances, Ziermann "wrote [her] up" for being five minutes late from a break, adding that she would be suspended or terminated the next time she was written up. Despite the supervisor's repeated sexual solicitations and threats, the Second Circuit nevertheless found his actions to be insufficiently severe to overcome their lack of pervasiveness. Id. at 59-60.

Here, no reasonable jury could find that a single, albeit crude, request for a date by a non-supervisory co-employee was so "extraordinarily severe" as to constitute a hostile work environment. Roberts was not plaintiff's supervisor, and she acknowledges that she never felt physically threatened by Roberts' utterance. Applying the Harris factors of frequency, severity, physical threats versus utterances, and intensity of interference with working conditions, a reasonable person in plaintiff's position would not consider the terms and conditions of her employment altered by this one comment.

6

District courts within this Circuit have granted summary judgment for defendants in cases involving comparable or even more serious allegations. See, e.g., Figueroa v. KK Sub II, LLC, 289 F. Supp. 3d 426 (W.D.N.Y. 2018) (four objectionable conversations insufficient to sustain a hostile work environment claim); Godineaux v. Laguardia Airport Marriott Hotel, 460 F. Supp. 2d 413, 422-23 (E.D.N.Y. 2006) (defendant's promise to "give [p]laintiff stock tips if [p]laintiff would sleep with him," and defendant's attempt to kiss plaintiff "did not rise to the level" of a hostile work environment); Presley v. Pepperidge Farm, 356 F. Supp. 2d 109, 121-22 (D. Conn. 2005) (granting summary judgment despite supervisor's comment that he wanted to "mess around" with the plaintiff and "have a threesome" with her).

As to the allegation that Sterling touched plaintiff's buttocks, this claim fails for two reasons. First, although reprehensible, it was not extraordinarily severe under the caselaw. See Fabiyi v. McDonald's Corp., 595 F. App'x 621, 623 (7th Cir. 2014) (holding two incidents of intentional buttocks "rubbing" was insufficiently severe); Ballance v. Energy Transp. Corp., No. 00-cv-9180, 2001 WL 1246586, at *11 (S.D.N.Y. Oct. 18, 2001) (holding plaintiff failed to state a claim for hostile work environment based on "one isolated incident" where a coworker touched her buttocks).

The allegation against Sterling pales in comparison to instances where supervisors have made repeated physical contact with intimate body parts.[2] Sterling's act was isolated, occurred over a matter of seconds in a crowded office space, was not accompanied by any words, did not occur in front of others, and did not interfere with plaintiff's working conditions. He didn't have

---

[2] See, e.g., Redd v. New York Div. of Parole, 678 F.3d 166 (2d Cir. 2012) (holding three instances of touching the plaintiff's breast by her supervisor could constitute a hostile work environment); Hand v. New York City Hous. Pres. & Dev. Div. of Code Enf't, 605 F. App'x 42, 43 (2d Cir. 2015) (summary judgment inappropriate when plaintiff's supervisor "felt her breast and repeatedly invaded her personal space"); Barrows v. Seneca Foods Corp., 512 F. App'x 115, 119 (2d Cir. 2013) (summary judgment inappropriate when supervisor "touched [plaintiff]'s intimate body parts many times").

7

the authority to fire or discipline plaintiff,[3] he did not place her in any physical harm, and she never reported this incident to her supervisor or HR.

Second, even assuming a grope of an intimate body part by a co-worker on one occasion could constitute a hostile work environment, there is no reason to impute this act to Avis. It is undisputed that Avis had established procedures for plaintiff to report sexual harassment, and plaintiff acknowledges that she never told a supervisor, management-level employee, or HR about it. The mere fact that Feliz had declined to reprimand Roberts for Roberts' inappropriate comment about a date was not sufficient to engender such a fear in plaintiff of retaliation that it absolved her of any obligation to report further inappropriate conduct to management.

And the undisputed facts show that Feliz's failure to do so did not intimidate her. When plaintiff ultimately spoke to a HR representative a few weeks after Sterling touched her, she did not disclose the incident (she only sought out clarification of the parts clerk position). In filling out her EEOC questionnaire, plaintiff did not mention this incident. Her omissions on these occasions are significant. See Lewis v. North General Hosp., 502 F. Supp. 2d 390, 403-04 (S.D.N.Y. 2007) (holding the plaintiff's failure to mention the subject of sexual harassment in his complaint to officials was indicative of the lack of impact on his work performance).

Nor can plaintiff satisfy her disclosure obligation by having reported to Singh. Singh was a non-supervisory bus mechanic – a co-worker – not part of management or in plaintiff's reporting line. There is no indication that Singh had an affirmative obligation under defendants' policy to report her allegation. If plaintiff believed Singh to be a "union representative," she was

---

[3] Other district courts in this Circuit have denied summary judgment where the allegations, *inter alia*, involved a single "grab" or "grope" of the buttocks by a supervisor. See, e.g., Richardson-Holness v. Alexander, 196 F. Supp. 3d 364 (E.D.N.Y. 2016); Dillon v. Ned Management, Inc., 85 F. Supp. 639, 663 (E.D.N.Y. 2015); Stathatos v. GalaRes., LLC., No. 06-cv-13138, 2010 WL 2024967, *5 (S.D.N.Y. May, 21, 2010). However, the perpetrator in those cases were the plaintiffs' supervisors, and the allegations included other instances of inappropriate behavior.

never part of the union (and she has not brought a separate claim against it). Because there is no basis to impute a union representative's knowledge to the employer, Avis cannot be liable for Sterling's grope.

### III.

The applicable standard for proving retaliation under Title VII and NYSHRL is the familiar burden shifting test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The McDonnell Douglas test requires that, first, the plaintiff establish a *prima facie* case of retaliation. To establish a *prima facie* case of retaliation, the plaintiff must:

> adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected [activity] under [the anti-discrimination statutes], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006). Upon such a showing, the employer must articulate legitimate non-discriminatory reasons for its actions. If it does so, the plaintiff bears the burden of showing that the employer's explanations are pretextual for the true discriminatory motive. See Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996).

Here, the timing of the offensive event in relation to the adverse employment action tends to suggest a *prima facie* case for retaliation. After she complained to her supervisor about Roberts' inappropriate comment, plaintiff was fired within 60 days of her protected communication. See Manoharan v. Columbia Univ. College of Physicians Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) ("Proof of the causal connection can be established indirectly by showing the protected activity was closely followed in time by the adverse action.").

9

However, defendants have articulated a legitimate, non-discriminatory reason for plaintiff's termination. It is undisputed plaintiff ordered the wrong parts at the initial stage of her employment. The record demonstrates that it took her "a couple of weeks" to learn the system for ordering parts. More importantly, at her deposition, plaintiff acknowledged that, although Feliz directed her to change the oil pads and complete data entry, she did not complete these tasks. Her failure to follow instructions because she thought, contrary to her employer, that her job did not require it was a legitimate reason for terminating a probationary employee. See Holt, 95 F.3d at 130.

Nor is it disputed that plaintiff struggled with her attendance and that she was absent or tardy every day during a 5-day workday. Plaintiff points out that Feliz could have made an exception to her absences, but she has not adduced any evidence that required Feliz to grant her an exception or anything else to suggest that he treated other probationary male employees more leniently – there is no evidence of Feliz's disparate enforcement of Avis's attendance policy. Her attendance issues are also sufficient for defendants to meet their burden of showing a legitimate reason for her termination. See Henny v. New York State, 842 F. Supp. 2d 530, 554 (S.D.N.Y. 2012).

Because defendants have presented a non-retaliatory, legitimate reason for plaintiff's termination, plaintiff had to present at least some evidence that defendants' actions were motivated, at least in part, by a desire to retaliate against her. However, she has failed to show that the timing of her complaint and her subsequent termination was anything but fortuitous. See Brown v. Coughlin, 965 F. Supp. 401, 406-07 (W.D.N.Y. 1997). She was, after all, a probationary employee, so she was either going to pass her probation period after 17 more days or not. In other words, because of the short length of the probationary period, the decision on

whether she passed had to be made proximate to her complaints. With so little to show during the probationary period, accepting plaintiff's argument that mere timing itself raises a factual issue would give probationary employees more protection than union member employees.

Plaintiff argues that she has raised a factual issue as to retaliation because, although she was terminated for poor work performance, the misconduct that Roberts[4] and Sterling committed was more severe, yet they were not terminated. However, Roberts and Sterling are not proper comparators. They were non-probationary employees, and union members with five and ten years of experience at Avis, respectively. They had the full protection of a union contract with its escalating disciplinary sanctions, which make termination of employees difficult. To be "similarly situated," the individuals with whom plaintiff attempts to compare herself must be similarly situated in all material respects. Shumway v. United Parcel Serv., 118 F.3d 60, 64 (2d Cir. 1997); Risco v. McHugh, 868 F. Supp. 2d 75, 102 (S.D.N.Y. 2012). Avis's policy explicitly stating that probationary employees were subject to accelerated discipline made this distinction clear.

Plaintiff also points out that Roberts and Sterling testified in their depositions that she performed reasonably well in her role as a parts clerk. But their conclusory testimony is insufficient for plaintiff to meet her burden after defendants provided ample evidence of her poor performance. Roberts and Sterling were not plaintiff's supervisors, but mechanics working primarily in the garage. Their opinions of her performance are likely inadmissible, but even if admissible, they have little or no probative value. Plaintiff has not demonstrated how they had the personal knowledge and qualifications necessary to accurately assess her work performance.

---

[4] Roberts had been suspended for refusing a direct order and yelling at a supervisor. Sterling was arrested for stealing car parts, but Avis only suspended him.

11

See Tubo v. Orange Reg'l Med. Ctr., 690 F. App'x 736, 740 (2d Cir. 2017). Similarly, plaintiff's own opinion that she was satisfied with her performance cannot raise an issue of fact. See Ricks v. Conde Nast Publications, Inc., 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000).

Lastly, plaintiff's attempt to create a material issue of fact as to whether the work given to her by Feliz was "outside her job description" is unavailing. At her deposition, plaintiff testified that the parts clerk job description HR provided to her was not the same document given to her by Feliz when she first started working (the "first job description"). Plaintiff also testified that she kept the first job description and had given the original to her attorney (who was defending her deposition). However, despite defendant's document request, plaintiff did not produce this purported document, nor did she submit it in opposition to the summary judgment motion. Evidence opposing a motion for summary judgment has to be admissible, and because plaintiff's testimony at trial regarding the content of the first job description would violate the best evidence rule, it is not. See Fed. R. Evid. 1002; Trustees of the Pavers and Road Builders District Council Welfare v. M.C. Landscape Grp., Inc., No. 12-cv-834, 2015 WL 12645526, at *23 (E.D.N.Y. Oct. 16, 2015); N.Y. ex rel. Spitzer v. St. Francis Hosp., 94 F. Supp. 423, 428 (S.D.N.Y. 2000).

This leaves us with the job description that HR provided to plaintiff by email on July 2017. It makes it clear that Feliz did not ask her to do anything beyond her job responsibilities. The description lists these responsibilities as including: (1) inputting information into the computer system as necessary to order, assign, and inventory required parts and equipment; (2) promptly and professionally processing all requests and reports to completion; (3) assisting in the inventory process, as requested; and (4) performing other duties and projects, as requested. The position also calls for "strong administrative skills." The "secretarial duties" that plaintiff alleges

12

were assigned to her in "retaliation" squarely fall into the responsibilities of a parts clerk, and thus Feliz's request that she complete tasks that were consistent with those duties is not indicative of retaliation. He simply asked her to do her job.

During her probationary period, plaintiff ordered the wrong parts, did not complete assigned tasks, and struggled with her attendance. This culminated in her receiving a negative written performance evaluation. On this record, a reasonable jury could not conclude that it was anything other than her performance which led to her termination. See Smith v. Da Ros, 777 F. Supp. 2d 340, 361 (D. Conn. 2011) ("It is logical that an employer, having received several complaints about the performance of a probationary employee approaching the end of his probationary period, would seek to terminate the employee, rather than allow him to be promoted to permanent status with all its protections.").

## IV.

Plaintiff's Title VII discrimination claims are governed by the burden-shifting test from McDonnell Douglas, 411 U.S. at 792. NYSHRL gender discrimination claims are subject to the same burden-shifting analysis as claims under Title VII. See Ruiz v. Cnty. of Rockland, 609 F.3d 486 (2d Cir. 2010). At step one, plaintiff must make out a *prima facie* case by showing that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that gives rise to an inference of discrimination. See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93 (2d Cir. 2010). At step two, a defendant must "articulate some legitimate, nondiscriminatory reason for its action," but "need not persuade the court that it was actually motivated by the proffered reason." Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks omitted). At step three, the burden shifts back to the

plaintiff to show "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2523 (2013).

Here, plaintiff has failed to demonstrate even a *prima facie* case of gender discrimination because there are no circumstances that gives rise to an inference of discrimination. She alleges she suffered two adverse employment actions when she was forced to perform "secretarial work" and was fired. However, the assignment of "extra clerical duties" and other "minor additional duties" do not constitute an adverse employment action. Brown v. City of New York, No. 11-cv-2915, 2013 WL 3789091, at *16 (S.D.N.Y. July 19, 2013). Moreover, there is no evidence that these tasks were assigned to her due to her gender. She was a parts clerk and, as noted above, the requirements of this position included completing administrative tasks and data entry (and other tasks as requested).

Although plaintiff attempts to draw an inference between her "secretarial duties" and the fact that she was the only female in a crew of approximately ten individuals, this fact alone is insufficient to sustain a finding of gender bias. Plaintiff has presented no evidence that a male co-worker, holding a comparable administrative position, should have been assigned these tasks or received more favorable treatment when it came time for Feliz to assign additional clerical duties. The record indicates that her male co-workers held different positions, while plaintiff held the administrative position as a parts clerk, and thus no rational inference of disparate treatment can be drawn from these facts. See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 290-91 (2d Cir. 1998).

As to her termination, this obviously constitutes an adverse employment action. However, in her opposition to defendants' motion for summary judgment, plaintiff does not

address why she believes her termination was improperly motivated by her gender, and there is no evidence in the record to support such an argument.

## V.

Under 28 U.S.C. § 1367(c), a district court may "decline to exercise supplemental jurisdiction over a claim" if the district court "has dismissed all claims over which it has original jurisdiction." The Supreme Court has directed that, except in unusual circumstances, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Dismissal of the state claims avoids "[n]eedless decisions of state law," which "should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id.

Thus, "[t]he strong preference in this Circuit is for district courts to decline to exercise supplemental jurisdiction under § 1367(c)(3) when all of the federal claims are dismissed from the suit prior to trial." Schiffman v. Epstein, No. 04-cv-2661, 2009 WL 1787760, at *7 (S.D.N.Y. June 23, 2009). When the federal claims are dismissed before trial, courts should only retain supplemental jurisdiction in unusual circumstances, including "when the remaining state law claims are linked to unique federal interests, when dismissal of the federal claims comes days before the commencement of trial, when the court has expended significant time in discovery and dispositive motion practice prior to dismissal of the federal claims, and when the state law claims do not present novel questions of state law." Id.

Having disposed of all the federal claims in this case before commencing or even scheduling trial, I decline to exercise supplemental jurisdiction over the remaining NYCHRL claims. The Court's prior involvement in this case does not weigh in favor of retaining

15

supplemental jurisdiction. The Court has had only minimal involvement in discovery, and there has been no motion practice in this case besides the instant motion.

Further, the NYCHRL claims raise different legal issues than the federal claims because "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation mark and citations omitted). For this reason, courts regularly decline to exercise supplemental jurisdiction over NYCHRL claims once the federal claims are dismissed. See Johnson v. DCM Erectors, Inc., No. 15-cv-5415, 2016 WL 407293, at *3 (S.D.N.Y. Feb. 2, 2016) (collecting cases).

## CONCLUSION

Defendants' [27] motion for summary judgment is granted as set forth above. The Clerk is directed to enter judgment, dismissing plaintiff's Title VII and NYSHRL claims with prejudice, and her NYCHRL claims without prejudice.

**SO ORDERED.**

                                                                  U.S.D.J.

Dated: Brooklyn, New York
        February 17, 2020